HOPPER, Administrator of WARRICK, deceased, v. SISK.

To render a party liable for representations of character, made by him, it is necessary to prove that they were fraudulently made.

ERROR to the *Henry* Circuit Court.

PERKINS, J.—*Burgess Sisk* brought his bill in chancery in the *Henry* Circuit Court, against *Albert H. Miller, James Calloway,* and *Samuel Hopper,* administrator of the estate of *Abraham Warrick,* deceased. The bill alleged that, on the 23d of *February,* 1837, said *Albert H. Miller* made two notes or due bills in the following terms:

"On or before the 25th of *December* next, due *Abraham Warrick,* one hundred dollars, with 10 *per cent.* interest from date.

"*February* 23, 1837.                    *A. H. Miller.*"

"On or before the 25th of *December*, 1838, due *Abraham Warrick*, one hundred and fifty dollars, with 10 *per cent.* interest from date.

"*Feb.* 23, 1837.                              *A. H. Miller.*"

The bill further stated, that, on the 12th of *May* 1838, said *Abraham Warrick* assigned these notes to *James Calloway*, and that *Calloway*, on the 8th of *November*, 1839, assigned them, without recourse, to the plaintiff, *Sisk;* that *Miller*, the maker of the notes, was, at the time the first of them fell due, notoriously insolvent, yet so remained, and had never paid either of the notes; that, on the 19th of *June*, 1844, *Warrick* died, leaving property, &c., and that *Samuel Hopper* was appointed administrator, &c.; that *Warrick*, in his lifetime, did not pay, and that his administrator, since his death, had not paid any part of said notes. It charged that, at the time the plaintiff, *Sisk*, "purchased said notes of the said *Calloway*, the said *Warrick* falsely and fraudulently represented to the said plaintiff, for the purpose of inducing him to purchase them, that said *Miller* was good, solvent, and able to pay the same," well knowing, at the same time, that he was wholly insolvent, &c.

The bill prayed that *Hopper*, administrator of the estate of *Warrick*, might be decreed to pay the notes out of said estate.

The bill was taken as confessed against *Miller*, upon default. *Calloway* answered. He admitted the making and assigning of the notes as stated in the bill, denied all fraudulent representations, and declared his ignorance of *Miller's* pecuniary circumstances. *Hopper* answered. He admitted himself administrator as alleged, and that he had assets in his hands belonging to *Warrick's* estate; denied the fraudulent representations charged in the bill as having been made by *Warrick*; knew nothing as to the execution or assignment of the notes, nor of *Miller's* pecuniary circumstances.

The cause was submitted to the Court upon bill, answers, depositions, &c. Decree, that *Hopper*, as administrator, &c., pay the notes.

The evidence was as follows:

1st. Notes and assignments corresponding to those alleged in the bill;

2d. Depositions.

That of *Joseph Davis* stated, that he was present when the notes were assigned by *Calloway* to *Sisk;* that *Warrick* was also present, and "told *Sisk*, at that time, that said *Miller* was good; that there was no danger; that the money would be paid, for *John Vickery* had just collected a large amount of money from said *Miller;* that he then had the money; and said *Warrick* further stated, at the same time, that there would be no trouble in getting the money from said *Miller*."

That of *James Fletcher* stated, that about the year 1839, as near as he could recollect, it was his opinion, and that of his neighbors, that *Albert H. Miller* was insolvent, though he had no positive knowledge that such was the fact; thought *Miller* left this state for *Illinois*, in 1839, and that a debt could not have been collected from him at the 1st of *November* of that year; that he sent a claim after him, for collection, to *Illinois*, but got nothing but a notice of his application for the benefit of the bankrupt law.

That of *Chancey Poor* stated, that he held a note for 25 dollars on *Miller*, in the fall of 1838, and seeing no way to collect, sold it, for 20 dollars; that he thought a debt could not have been collected from him at the time he left this country.

That of *Solomon Charlesworth* stated, that he thought *Miller* insolvent in the fall of 1839. This was all the evidence.

*Miller*, the maker of the notes in this case, is proved, not very satisfactorily, however, to have been insolvent in the fall of 1839. Both of the notes became due by the 25th of *December*, 1838, nearly a year prior to *Miller's* proved insolvency, and both were assigned by *Warrick*, the payee, to *Calloway*, in *May*, 1838, being more than a year anterior to that event. No suit having been brought during this time, against the maker, and no excuse existing for the negligence, *Warrick* was discharged from lia-

bility as indorser by the want of "due diligence," while the notes were in the hands of *Calloway*, and before his assignment of them to *Sisk*. That assignment did not revive *Warrick's* liability. *Sisk*, then, never had any claim against *Warrick* as indorser on the notes. They were in his hands as though *Warrick's* name was not upon them. Did the representations made by *Warrick* render him liable? They were representations of character, and to have subjected him to an action, they must have been fraudulent. We think they are not shown to have been so. It is not shown that *Sisk* acted upon them, or that they were made with the view of his acting upon them; nor is it shown that *Warrick* knew they were untrue, and no collusion or interest on his part appears. Suppose *Sisk* had been about to make *Miller* his debtor by selling him a lot of goods, and had asked *Warrick* whether he would be safe in so doing, and had received answer that he would—that *Miller* was a good and solvent man; now, if these representations had been honestly, though mistakenly made, all the authorities from *Pasley* v. *Freeman*, down to this time, hold that *Warrick* would not have been liable for them. *Sisk* was about to make *Miller* his debtor by buying a note on him. He was told at the time by *Warrick* that *Miller* was good. How does this actual case differ in principle from the above supposed one? See 2 Smith's L. C. 55, and *Ormond* v. *Huth et al.*, 14 M. & W., 651.

*Per Curiam.*— The decree is reversed with costs. Cause remanded, &c.

*R. M. Cooper*, for the plaintiff.

*S. W. Parker*, for the defendant.